JOURNAL ENTRY AND OPINION.
{¶ 1} In this appeal brought on the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1, plaintiffs-appellants[1] challenge the trial court order that refused to "reinstate" their causes of action against Rickey D. Brisentine, an individual defendant originally named in their complaint and amended complaint for wrongful death and personal injury.[2] The purpose of an accelerated appeal is to permit the appellate court to render a brief and conclusory decision. Crawford v.Eastland Shopping Mall Assn. (1983), 11 Ohio App.3d 158.
 {¶ 2} Appellants' single assignment of error presents alternative assertions. Appellants first assert the action against Brisentine never was resolved; therefore, the trial court acted improperly in failing to resume its jurisdiction over the case. Appellants further assert that if the previous orders of voluntary dismissal entered in this case encompassed Brisentine and thus constituted final orders, appellants were entitled to relief pursuant to Civ.R. 60.
 {¶ 3} This court finds after a review of the record that both of appellants' assertions are insupportable. Consequently, the trial court's order is affirmed.
 {¶ 4} Appellants' action results from a motor vehicle accident that occurred on October 24, 1993. After consuming a significant amount of alcohol at a Cleveland Browns football game held in Cleveland Stadium, Brisentine's vehicle collided with an automobile being driven by Duane Haygood. Haygood's passenger Martinez Blackman was killed and his passenger David Wallace sustained severe injuries.
 {¶ 5} Appellants filed a complaint seeking damages for wrongful death and personal injury on December 15, 1994. Although appellants named three individual defendants, i.e., Haygood, Brisentine, and Brisentine's wife, who owned the vehicle he drove, appellants also named as defendants the Cleveland Stadium Corporation and its purveyor of alcoholic beverages, Service America Corporation. Appellants based their theories of liability against the corporate defendants on both the "Dram Shop Act"[3] and common law negligence.
 {¶ 6} The record reflects Brisentine was served with the complaint, but never filed an answer. This apparently did not concern appellants, since they instead focused their subsequent discovery efforts on proving their claims against the corporate defendants. Indeed, after Brisentine was convicted on felony charges related to the accident, appellants went to the prison in which he was incarcerated to obtain his deposition. Appellants thus obviously knew they could seek to obtain a default judgment against Brisentine; however, they never sought one.
 {¶ 7} Brisentine's deposition testimony is contained in the record. In the context of the instant appeal, it is significant to note he stated he went to the football game after performing work for his employer, the owner of a downtown parking lot. He testified he had ingested some alcohol prior to attending the game. He further testified he had no automobile liability insurance of his own.
 {¶ 8} On March 4, 1996, appellants filed a Civ.R. 41(A)(1) notice of voluntary dismissal of their claims against Brisentine's wife. On August 1, 1996, the corporate defendants filed a motion for summary judgment. Appellants vigorously opposed the motion. Eventually, on March 25, 1997, the trial court granted the motion as to appellants' claims based upon the "Dram Shop Act," but denied it as to appellants' common law negligence claims. In its order, the trial court noted trial was set for May 12, 1997.
 {¶ 9} On April 4, 1997, appellants filed their first amended complaint, again naming the corporations as defendants, but this time naming as an individual defendant only Brisentine. Appellants sought judgment against the defendants "jointly and severally" significantly, they failed to indicate they made any attempt whatsoever to serve this amended complaint upon Brisentine. Thus, only the corporate defendants filed answers to it.
 {¶ 10} A pretrial conference was held on May 9, 1997. Apparently as a result of discussions between the parties that attended, the trial court on that date issued a judgment entry that stated "the case [was] settled and dismissed with prejudice at defendant's (sic) costs." It further stated "notice" had been "waived."
 {¶ 11} The parties also presented the trial court with a document that stated "the attorneys for all parties in the case" did "stipulate and agree that all claims, cross-claims, and counterclaims of any kind" against Haygood were dismissed with prejudice, and further requested the trial court to "enter an order accordingly, notice * * * being herby (sic) waived." The trial court signed this second order and entered it on the docket the same day.
 {¶ 12} On November 19, 2002, appellants filed a motion "to reactivate case against defendant Rickey Brisentine, Only." Appellants asserted "a final order" against Brisentine "was never entered"; therefore, they sought "a complete and just conclusion" to the matter. In a footnote, however, appellants conceded Civ.R. 60 applied and sought relief from the previous orders of dismissal under both sections of that rule. Appellants asserted any "dismissal" of their claims against Brisentine "would qualify as a `clerical mistake' since this was never [their] intention," and, also, "the same rationale would justify such relief under subsections (B)(1) (5)."
 {¶ 13} Appellants attached their counsel's affidavit to the motion. Counsel stated appellants had left their claims against Brisentine pending "until such time that he became collectible." Although counsel made no mention of it, he apparently believed Brisentine was now "collectible" at the time the motion was filed.
 {¶ 14} The motion remained unopposed; nevertheless, on January 6, 2003, the trial court issued a judgment entry denying it. The trial court set forth its reasoning in the judgment entry. It essentially stated that appellants had indicated the May 9, 1997 dismissals were intended by them to constitute "final orders" by failing either to seek a default judgment against Brisentine or to pursue any other action in the case for five and one-half years. Appellants' appeal challenges the trial court's foregoing refusal to exercise jurisdiction in this case. They present alternative arguments in their single assignment of error: 1) the dismissals never constituted final orders; or, 2) if they did, relief is warranted under Civ.R. 60. Neither of appellants' arguments has merit.
 {¶ 15} As to appellants' prime argument, the record contradicts their assertion they did not "intend" the orders of dismissal to be final. The conclusion the orders indeed were meant to constitute an end to the litigation against all the defendants is reflected by the following facts: 1) appellants sought neither a default judgment against Brisentine after filing their initial complaint, nor any service upon him of their first amended complaint; 2) appellants failed to draw the trial court's attention at the time of the entry of the orders of dismissal to either its use of the singular in reference to the corporate defendants or its indication judgment in the case was "final;" 3) appellants ensured no claims remained against defendant Haygood even though they did not name him as a defendant in their first amended complaint; and, 4) appellants waited over five years to file their motion to "reactivate" their case against Brisentine.
 {¶ 16} Appellants concede they sought "reactivation" only to take advantage of the Ohio Supreme Court decision in Scott-Pontzer v. LibertyMut. Ins. Co., 85 Ohio St.3d 660, 1999-Ohio-292. Brisentine had been employed at the time of the accident: therefore, by the time of appellants' motion to "reactivate" the case, he seemed finally to be potentially "collectible." In actuality, however, appellants again do not intend to pursue Brisentine personally, but, rather, still another corporate defendant: his employer's commercial liability insurance company.[4]
 {¶ 17} As to appellant's secondary argument, the trial court clearly did not abuse its discretion when it determined appellants did not warrant relief from the dismissals pursuant to Civ.R. 60(B). Griffeyv. Rajan (1987), 33 Ohio St.3d 75. Appellants waited an unreasonable amount of time to seek relief from the final judgments entered in the case. Johnson v. Meridia Euclid Hosp., Cuyahoga App. No. 80072, 2002-Ohio-1402.
 {¶ 18} Appellants filed their initial complaint in 1994. Thereafter, despite knowing precisely Brisentine's location, they attempted neither to obtain a default judgment against him nor to serve him with a copy of their first amended complaint. Moreover, they waited until late 2002, nearly another three years after Scott-Pontzer was decided, to pursue the new avenue of litigation presented.
 {¶ 19} Under these circumstances, the trial court ruled appropriately in denying appellants' request to reassume jurisdiction in this case and refusing to grant their motion to "reactivate" their claims against Brisentine. Id. Although the law generally seeks specificity in rulings on the merits of a case, it also favors finality in judgments.
 {¶ 20} Appellants' assignment of error, accordingly, is overruled.
Affirmed.
It is ordered that appellees recover of appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J. and DIANE KARPINSKI, J. concur.
[1] Plaintiffs-appellants are Jeffrey Blackman, Administrator of the Estate of Martinez Blackman, David Wallace, and Jacqueline Wallace.
[2] Appellants also named in their complaint and amended complaint corporate defendants Cleveland Stadium Corporation and Service America Corporation.
[3] Appellants cited R.C. 4399.01, et seq.
[4] This analysis renders appellants' assertion they were entitled to relief under Civ.R. 60(A) equally unsupportable.